UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOEL R.,

                         Plaintiff,

v.                                                          CASE NO. 6:25-cv-06068
                                                            (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

_____

J. Gregory Wehrman, U.S. Magistrate Judge,

### MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 8, 10), as well as Plaintiff's Reply (Doc. 11). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 8) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 10) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.     RELEVANT BACKGROUND

### A.     Procedural Background

On April 18, 2022, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, as well as an application for supplemental security income, alleging an onset date of April 12, 2022.  (Tr. 75, 280-86, 287-93.)   The

applications were denied initially on October 7, 2022 and upon reconsideration on April 25, 2023.  (Tr. 72-73, 122-23.)  Plaintiff then timely requested a hearing before an Administrative Law Judge (ALJ), (Tr. 191-92), and appeared with counsel for a telephonic hearing before ALJ Mary Jane Pelton on January 25, 2024, (Tr. 46-71).  On March 13, 2024, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  (Tr. 14-45.)  The Appeals Council denied Plaintiff's request for review, (Tr. 1-6), and Plaintiff timely filed her appeal to this Court.

### B.    Factual Background[1]

Plaintiff was born on June 22, 1979, (Tr. 74, 124), and obtained an associate of science degree in college, (Tr. 53).  Plaintiff alleged several impairments in support of his disability claim, including seizure conation; diabetes type I; memory loss; bacterial infections; abdominal pain; cellulitis; chronic fatigue; attention problems; neuropathy in hands and feet; scrotal abscess; and blurry vision.  (Tr. 75, 99, 124, 136.)

When asked why he stopped working, Plaintiff responded "everything to do with my hands and my feet and very annoying scrotal abscess that [he has]."  (Tr. 54.)  Plaintiff testified that he could not stand more than fifteen minutes before "things get vastly complicated."  (Tr. 56.)  After those fifteen minutes, Plaintiff indicated he would be at a pain level of ten out of ten. (*Id.*)  Plaintiff further explained that he could walk about one city block, but he noted that weather affected his ability to walk due to his arthritis in his feet, in addition to the neuropathy. (*Id.*)  Plaintiff described that he struggled to keep his balance as he continued to walk, noting that he did not use a cane or walker but did use insoles.  (Tr. 56-57.)

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

Plaintiff further explained that he gets numb quickly when sitting, and so he can sit for only five to ten minutes before his neuropathy begins. (Tr. 57-58.) He indicated that wearing compression socks, using a pain cream for his feet, changing positions, and using a foot massager helps to relieve the numbness. (Tr. 58.)

Plaintiff also testified about the impact neuropathy has on his hands, indicating that he has "no grip strength" in one of his hands, noting the fingers and knuckles have been broken and cannot be fixed, while the grip in his other hand is "mediocre." (*Id.*) He explained that he was unable to type or write, which was why he had his mother complete the paperwork for him pertaining to his claim. (Tr. 59.) Regarding his ability to lift, Plaintiff described that he could lift a gallon of milk with his right hand, but not his left. (Tr. 58.)

Plaintiff indicated he could get dressed and feed himself, but it took time as he had no one to ask for help because he lived alone. (Tr. 52-53, 59.) He explained that his morning routine took over two and a half hours. (Tr. 60.) He confirmed he had a driver's license and drove himself to medical appointments, which occurred several times a week. (Tr. 53.)

Plaintiff also addressed the seizures he experienced, which were often the result of low blood sugar, noting that he loses consciousness when they occur, and he may bite his tongue during the seizure. (Tr. 60-61.) He described that the seizures often happen while he sleeps, which causes him to experience sleepiness throughout the day. (Tr. 61.) Also, if he had a seizure overnight, it causes a disruption to his morning and thus impacts his concentration in the morning. (Tr. 62.) The highs and lows of his blood sugar levels make it difficult for him to "live a regular day," as the lows make him groggy and the highs bring the neuropathy to his feet and affect his vision. (*Id.*)

Plaintiff further explained the impact of his ability to function when his scrotal abscess is inflamed. (Tr. 57.) He testified that he cannot move until the abscess has drained, which takes about a week and a half to two and a half weeks for the skin to break and the drainage to complete. (*Id.*) Plaintiff indicated that his urologist advised he would be experiencing these abscesses for the rest of his life, noting they occur often. (Tr. 63.)

### C.    Medical Opinion Evidence

The record contains several medical opinions, and in light of Plaintiff's challenges before this Court, a summary of the opinions pertaining to Plaintiff's physical impairments[2] is helpful.

Dr. Wyatt Snellgrove, Plaintiff's treating physician, provided four medical opinions. The first opinion, dated May 20, 2022, limited Plaintiff to occasionally lifting twenty pounds; standing/walking for six hours; no limits on sitting; limited lower extremity pushing/pulling; some postural limitations; and a limitation on reaching only occasionally. (Tr. 892-95.) Next, on August 5, 2022, Dr. Snellgrove signed a letter noting that Plaintiff's "conditions have affected his ability to keep a consistent routine in regard to his occupation. Therefore, he has been unable to work consistently due to this. I can attest to these medical conditions creating a barrier for stable employment." (Tr. 933.) Then, on November 14, 2022, Dr. Snellgrove offered a third opinion, which was much more limited than the first. (Tr. 970-75.) Specifically, he limited Plaintiff to standing/walking two hours in an eight-hour day; sitting no more than one hour at a time before needing to change positions (which would require ten to fifteen minutes); and also opining that Plaintiff would need to take unscheduled breaks every two to three hours for fifteen to

---

[2] Plaintiff does not challenge the ALJ's evaluation of his mental impairments, rendering any opinions pertaining to his mental conditional irrelevant to this decision.

4

thirty minutes at a time.  (Tr. 973.)  Finally, on August 14, 2023, Dr. Snellgrove provided

correspondence reflecting that:

> In the past 12 months, he has had approximately 12 appointments (in person or telemedicine) with various providers for his chronic conditions. I do feel this adversely affects his ability to work long-term, certainly in the last 12 months. He has been unable to work because of this. We are continuing to treat his chronic conditions, but I do feel his diagnoses above can be seen as chronic, some permanent (Type 1 diabetes), which ultimately have prevented him from full-time work.

(Tr. 1117.)

Consultative examining physician Dr. Justine Magurno issued two opinions as to Plaintiff's functional abilities.  On September 1, 2022, Dr. Magurno examined Plaintiff and noted: "Gait normal. Uses no assistive device. Can walk on heels and toes without difficulty. Squat full, but slightly difficult. Stance normal.  Needs no help changing for exam or getting on and off exam table. Able to rise from chair without difficulty. Cooperation and effort were good." (Tr. 939.)  She also noted a slightly reduced range of motion in Plaintiff's shoulders and hips.  (Tr. 939, 940.)  Plaintiff also reported to Dr. Magurno that "[h]e does not need help at home. He cooks three times a week. He cleans, does laundry, and shops once a week.  He showers and dresses seven times a week. He watches TV, listens to the radio, reads, and does online social media." (Tr. 938.)  She opined that Plaintiff should "avoid activities where he or others could be injured if he had a seizure. Moderate limitations walking, standing, lifting, carrying left-sided pushing or pulling, mild for left side fine motor tasks."  (Tr. 940.)

On April 7, 2023, Dr. Magurno noted that Plaintiff reported needing help at home, being unable to perform any activities of daily living due to pain, and that his pain in his feet and legs was getting worse.  (Tr. 1058.) She again examined Plaintiff, noting: "[g]ait

normal. Uses no assistive device. Heel and toe walking declined. Squat 1/3 full. Stance normal. Needs no help changing for exam or getting on and off exam table. Able to rise from chair without difficulty. Cooperation and effort were good." (Tr. 1059.) She opined that "[h]e should avoid activities where he or other could be injured if he had seizures. Marked limitations for squatting. Moderate for lifting, carrying. Mild for reaching, walking, standing, pushing, and pulling on the right. Evaluation left hand function declined." (Tr. 1060-61.)

Two agency reviewers provided opinions as to Plaintiff's ability, at both the initial and reconsideration level. In October 2022, Dr. Kirsch opined that Plaintiff was capable of medium exertional work, and so could lift or carry fifty pounds occasionally and twenty-five pounds frequently; stand/walk about six hours in an eight-hour day; sit more than six hours on a sustained basis in an eight-hour day, and Dr. Kirsch also assigned some postural, manipulative, and environmental limitations. (*See* Tr. 88-90.) In April 2023, Dr. Reynolds, whose opinion the ALJ found to have the "most persuasive value," opined that Plaintiff could occasionally lift/carry twenty pounds, frequently ten pounds; stand/walk about six hours; sit more than six hours; and also assigned additional postural and environmental limitations, but no manipulative limitations. (Tr. 131-32.)

### D.    The ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2027. (Tr. 19.)

2. The claimant has not engaged in substantial gainful activity since April 12, 2022, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.). (Tr. 19.)

6

3.  The claimant has the following severe impairments: scrotal abscess, diabetes mellitus, obesity, and epilepsy (20 CFR 404.1520(c) and 416.920(c)). (Tr. 20.)

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 25.)

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs; he can occasionally balance as defined by the SCO, stoop, kneel, crouch, and crawl; he can frequently reach, push, pull, handle, finger, and feel with the bilateral upper extremities; and he should avoid exposure to hazards such as unprotected heights and dangerous moving machinery. (Tr. 26.)

6.  The claimant is capable of performing past relevant work as a musical instruments and accessories salesperson. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965). (Tr. 25.)

7.  The claimant has not been under a disability, as defined in the Social Security Act, from April 12, 2022, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)). (Tr. 38.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also

include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B.      Standard to Determine Disability

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the

8

claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

III.    **ANALYSIS**

Plaintiff asserts two points in support of remand.  First, he argues generally that Plaintiff's pain and other symptoms prevent him from meeting the RFC, more specifically the standing/walking requirement, the requirement to stay on task, and the ability to regularly attend work. (*See* Doc. 8-1 at 9[3].) In support of this argument, Plaintiff contends that the ALJ improperly relied on the opinions of Dr. Reynolds and Dr. Kirsch, while incorrectly rejecting the more limiting opinions of Dr. Snellgrove.  (*See id.* at 9-18.) Second, Plaintiff maintains that the ALJ erred by concluding Plaintiff was able to perform past work or any other work.  (*See id.* at 18.)

**A.  The ALJ Properly Evaluated the Medical Opinion Evidence.**

As a preliminary matter, the regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021).  As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo*, 31 F.4th at 78.

---

[3] For ease of reference, the Court's citation to the parties' briefing is to the ECF page number, not the pagination utilized by the parties.

Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  This naturally requires the ALJ to reconcile conflicting medical evidence in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

With regard to an ALJ's consideration of medical opinion evidence, the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules"*), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, provide that the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a

medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

Significantly, it is important to note at the outset that Plaintiff's arguments regarding the ALJ's evaluation of the medical opinion evidence are, at their core, an invitation to this Court to reweigh the evidence, which is simply not a basis for remand. *See David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination.")); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016)).  The Court is plainly prohibited from re-weighing the evidence.  *See Krull*, 669 F. App'x at 32.  And while Plaintiff identifies certain evidence that may be viewed as supporting his position, he at most identifies a conflict in evidence, which is to be resolved by the ALJ.  *See Veino*, 312 F.3d at 588.  And once resolved by the ALJ, the factual findings cannot be overturned by this Court unless "a

11

reasonable factfinder would *have to conclude otherwise*."    *Brault*, 683 F.3d at 448 (emphasis in original) (citation omitted).

Moreover, as discussed below, Plaintiff's individual challenges fail on their merits.

### 1. The opinions of Dr. Reynolds and Dr. Kirsch

Plaintiff argues that the ALJ inadequately analyzed the supportability and consistency factors. (Doc. 8-1 at 11-12.) Plaintiff also contends that Dr. Reynold's report is problematic because it contains "negligent omissions" surrounding the extent of Plaintiff's neuropathy and fails to properly assess pain associated with Plaintiff's cellulitis condition in his scrotum and legs. (*See id.* at 12, 13.) Finally, Plaintiff argues that Dr. Reynold's opinion is inconsistent with the longitudinal evidence reflecting worsening symptoms of neuropathy. (*See id.* at 14.) As for Dr. Kirsch's opinion, Plaintiff incorporates the arguments used to challenge Dr. Reynold's opinion, generally maintaining that ALJ erred to the extent she placed any reliance on Dr. Kirsch's opinion that Plaintiff could stand/walk six hours per day given his neuropathy and cellulitis.[4] (*See id.* at 15-16.)

The ALJ evaluated the opinion of Dr. Reynolds, finding it to have the "most persuasive value:"

> The undersigned concludes that the opinion of Dr. Reynolds is supported by his program knowledge and expertise, his review of the available evidence of record, and the detailed explanation he furnished for his opinion. The undersigned further concludes that the opinion of Dr. Reynolds is generally consistent with the evidence that was available to him. Nevertheless, the determination by Dr. Reynolds that the claimant could frequently balance and had no manipulative limitations is not entirely consistent with all of the information that is now in the record. Based on the

---

[4] The Court notes that Plaintiff asserts several arguments in a single list pertaining to Dr. Reynolds's opinion. (See Doc. 8-1 at 14.) Regrettably, none of these arguments are thoroughly explained or briefed, and to the extent they are not encompassed within the Court's analysis of the issues properly presented, they are deemed waived. *See Ashley P. H. v. Comm'r of Soc. Sec.*, No. 22-CV-442-MJP, 2025 WL 606547, at *5 (W.D.N.Y. Feb. 25, 2025) (recognizing that "[w]here a party fails to raise an issue sufficiently, the court may 'exercise' its 'discretion to treat' such a 'claim of error as waived.') (internal citation omitted)

> evidence received at the hearing level, therefore, the undersigned has concluded that the claimant can only balance on an occasional basis, and is further limited to frequent reaching, pushing, pulling, handling, fingering, and feeling with the bilateral upper extremities.

(Tr. 32) (internal citations omitted).

The ALJ found Dr. Kirsch's opinion to be "less persuasive," noting that his conclusions were not entirely consistent with the opinion of Dr. Reynolds. (*See* Tr. 33-34.)  She concluded that "the assessment of the claimant by Dr. Reynolds is more persuasive than the opinion of Dr. Kirsch, because Dr. Reynolds was able to review some of the evidence that was added to the record after Dr. Kirsch rendered his opinion." (*Id.*)  Indeed, the ALJ's ultimate RFC is more limiting than Dr. Kirsch's opinion. (*See* Tr. 26; 33-34.)

As an initial matter, an ALJ is permitted to rely on a state agency medical consultant's opinion, as such opinions can constitute substantial evidence when they are consistent with the medical evidence in the record. *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (recognizing that the Commissioner's regulations permit the opinions of non-examining sources to constitute substantial evidence in support of the ALJ's decision and can even override a treating source's opinion); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016).

Here, as set forth below, the Court finds that Dr. Reynolds's opinion was consistent with the record evidence and thus constituted substantial evidence to support the ALJ's RFC.  As noted by the ALJ, Dr. Reynold's opinion contained a thorough examination of record evidence, which reflected Plaintiff's difficulties, certainly, but no functional limitations beyond what is accounted for in the RFC. (*See* Tr. 132-34.)  While Plaintiff contends that Dr. Reynolds omitted certain treatment records describing Plaintiff's

neuropathy, the Court notes that most of these identified notes occurred after Dr. Reynolds performed his evaluation of the record evidence.  (*Compare* Tr. 134) (Dr. Reynolds's opinion dated April 25, 2023); (*with* Doc. 8-1 at 12) (citing Tr. 1201) (progress note dated July 31, 2023); (Doc. 8-1 at 13) (citing Tr. 1232) (progress note dated January 15, 2024).

However, the ALJ expressly noted the January 2024 treatment record pertaining to Plaintiff's neuropathy. (*See* Tr. 30) (citing Tr. 1232-34).  Importantly, this record recognizes that Plaintiff has experienced neuropathy for ten years, noting that it had "gotten worse over time."  (Tr. 1232.)  However, it also reflected that medication, specifically gabapentin helped reduce the pain, as did a separate cream he used. (*See id.*)  It also characterized Plaintiff's neuropathy as "fairly mild" overall, recognizing that Plaintiff was taking a "fairly low dose" of gabapentin that could be increased.  (Tr. 1233.) Other medications were also identified, as were alternative courses of therapy.  (*See id.*) Thus, while Plaintiff emphasizes certain treatment records[5] that highlight the severity of his neuropathy, and so can be viewed as supporting his position, this at most highlights a conflict in evidence, which is to be resolved by the ALJ.  *See Veino*, 312 F.3d at 588. This Court cannot overturn the ALJ's resolution of this conflict on these facts.

The same conclusion is unavoidable when considering Plaintiff's argument that Dr. Reynolds improperly evaluated Plaintiff's pain when analyzing his scrotal abscess

---

[5] The Court notes that certain of these records appear to be from a period where Plaintiff independently stopped taking gabapentin, which undisputedly helped with his pain.  (*See* Tr. 1162) (noting that Plaintiff stopped taking gabapentin "and he said his neuropathy went through the roof").  As such, while these records are certainly informative, they are limited in value because Plaintiff ultimately resumed his medication therapy. (Tr. 1105-06) (noting Plaintiff was not complaining of pain; reflecting the restart of gabapentin); (Tr. 1113) (reflecting that Plaintiff was not complaining of pain and that his neuropathy caused "[i]ntermittent sharp pain, otherwise controlled"); *but see* (Tr. 1200-01) (reflecting pain rated as a ten, but noting the pain comes and goes, and suggesting additional therapeutic treatments); (Tr. 1222) (reflecting pain).

condition. In his opinion, Dr. Reynolds assessed Plaintiff's complaints of pain, concluding they were not supported by the objective evidence. (*See* Tr. 130) (concluding that Plaintiff's statements about pain are "partially consistent" with the evidence in the record, and that the statements about the "intensity, persistence and limiting effects of these symptoms are generally not consistent with the evidence of the record"). The ALJ reached the same conclusion.   (*See* Tr. 32) (". . . the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record"). While Plaintiff challenges this factual finding, it cannot be reversed by this Court unless Plaintiff can show that "a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448.  Given the numerous records that reflect Plaintiff often did not complain of pain, (*see, e.g.*, Tr. 963, 966, 1019, 1088, 1099), and the numerous normal findings on objective examinations, (*see, e.g.*, Tr. 960, 964, 967, 1133, 1136-37, 1140), Plaintiff simply has not met that burden.

Indeed, while Plaintiff contends that Dr. Reynolds's opinion, as well as Dr. Kirsch's opinion, are flawed because they conclude Plaintiff can walk up to six hours in an eight-hour day, it is imperative to note that four medical experts reached the same conclusion. (*See* Tr. 88-96, 112-17) (Dr. Kirsch); (Tr. 131-34, 142-46) (Dr. Reynolds); (Tr. 892-95) (Dr. Snellgrove); (Tr. 937-41, 1057-61) (Dr. Magurno)[6].  (*See* Tr. 892-95.)  Notably,

---

[6] The Court notes that, although Dr. Magurno did not expressly conclude that Plaintiff could walk up to six hours, she found that he had "moderate limitations" in walking and standing at her initial consultative examination of Plaintiff, (*see* Tr. 940), and then a mild limitation in walking and standing at her subsequent evaluation of Plaintiff, (*see* Tr. 1060). Courts within this Circuit have recognized that "moderate limitations" in standing and walking are consistent with an RFC for light work.  *See Henderson v. Saul*, 788 F. App'x 86, 87 (2d Cir. 2019); *Harrington v. Colvin*, No. 14-CV-6044P, 2015 WL 790756, at *15 (W.D.N.Y. Feb. 25, 2015) (collecting cases).

Plaintiff did not challenge the ALJ's analysis or conclusions pertaining to either Dr. Snellgrove's May 2022 opinion or either of Dr. Magurno's opinions.

And the Court finds the ALJ's supportability and consistency analysis to be adequate.   While Plaintiff's labels it as "conclusory," the Court disagrees. The ALJ thoroughly detailed Plaintiff's treatment history and the evidence contained in the medical record before analyzing the medical opinion evidence.   (*See* Tr. 27-32.)   It is well-established that an ALJ's decision must be read as a whole.  *See Marie Ann R. v. Comm'r of Soc. Sec.*, No. 22-CV-06153-HKS, 2024 WL 3046619, at *10 (W.D.N.Y. June 18, 2024) (rejecting a plaintiff's challenge to an ALJ's analysis as "cursory or deficient" when the decision was considered in its entirety).

After careful review of the record, the Court concludes that the ALJ did not err in relying on the opinions of Dr. Reynolds and Dr. Kirsch and finds that the ALJ's evaluation of the opinions and her RFC was supported by substantial evidence.   Plaintiff has simply not shown that "the record requires a reasonable factfinder to reach a different result." *See Spottswood v. Kijakazi*, No. 23-54-cv, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (summary order).

### 2.  Dr. Snellgrove's opinions

Plaintiff next argues that the ALJ erred by rejecting the August and November 2022 opinions submitted by Dr. Snellgrove which concern Plaintiff's ability to stay on task, maintain regular attendance, stand/walk during an eight-hour workday, and his need to change positions.[7] (Doc. 8-1 at 15.) Plaintiff contends that the ALJ wrongly relied on

---

[7] Significantly, Plaintiff does not challenge the ALJ's evaluation of Dr. Snellgrove's May 2022 opinion, or her conclusions in any way. In her fair evaluation of this opinion, the ALJ disagreed with certain conclusions of Dr. Snellgrove, finding some of his conclusions to be an "overestimation" of Plaintiff's abilities.  (*See* Tr. 33.)

physical examinations performed by Dr. Snellgrove during the relevant period, because the consistency analysis should look at the totality of the medical evidence, not just physical examinations by Dr. Snellgrove, and the longitudinal evidence supports greater limitations regarding standing/walking. (*Id.*) Plaintiff further maintains that the physical examinations were not normal, as the ALJ failed to consider positive findings within Dr. Snellgrove's records, including findings regarding pain and work-related limitations. (*See id.*) He further challenges the ALJ's rejection of Dr. Snellgrove's off-task and absenteeism limitations, arguing that the ALJ wrongly interpreted the limitation as stemming from mental, rather than physical limitations. (*See id.* at 16.)

The ALJ evaluated Dr. Snellgrove's opinions submitted after May 20, 2022, finding them to be unpersuasive. (*See* Tr. 34.) Specifically, after recounting the relatively stringent limitations to which he opined, she noted:

> Nevertheless, the treating notes of Dr. Snellgrove do not support his disabling assessments of the claimant (Exhibits 22F, 37F). All physical exams of the claimant that were performed by Dr. Snellgrove during the period under consideration have been within normal limits (Exhibits 22F, 37F). There is also no suggestion that Dr. Snellgrove ever conducted any formal testing of the claimant's attention and concentration to support the conclusion by Dr. Snellgrove that the claimant's experience of pain, fatigue, or other symptoms would occasionally be severe enough to interfere with his attention and concentration (Exhibits 22F, 23F, 37F). Quite to the contrary, all mental status exams of the claimant that have been performed by Dr. Snellgrove during the period under adjudication have also been unremarkable (Exhibits 22F, 37F). Similarly, the estimation by Dr. Snellgrove that the claimant would be absent from work for two to three times a month is wholly speculative and not supported by any documented observation or evaluation (Exhibit 23F). Moreover, these opinions by Dr. Snellgrove are inconsistent with the opinions of Dr. Reynolds, Dr. Kirsch, and Dr. Magurno (Exhibits 3A, 4A, 7A, 8A, 18F, 19F, 29F). The undersigned further notes that the determination of whether a claimant is unable to work and, therefore, disabled under the Social Security Act has been reserved to the Commissioner (20 CFR 404.1520b(c)(3)(i); 20 CFR 416.920b(c)(3)(i)).

(Tr. 35.)

The Court finds no error in the ALJ's supportability and consistency analysis. While Plaintiff complains that the ALJ improperly limited her consistency evaluation to Dr. Snellgrove's records only, the Court finds nothing improper, as the ALJ was evaluating the supportability of Snellgrove's opinion using his own treatment records, finding his conclusions unsupported by them.  (*See* Tr. 35.)  The ALJ then considered the consistency of the opinion with the record, expressly noting that Dr. Snellgrove's conclusions were inconsistent with the other medical opinions in the record, as is appropriate.  (*See id.*)  Moreover, the ALJ had previously detailed Plaintiff's treatment history, and because the decision must be read as a whole, it is relevant to her analysis and conclusions.  *See Marie Ann R.*, 2024 WL 3046619, at *10.

Again, while Plaintiff points to certain facts he contends supports Dr. Snellgrove's opinions, the ALJ is charged with resolving conflicts within the evidence, which she has done.  *See Veino*, 312 F.3d at 588.  The Court has reviewed Dr. Snellgrove's records and finds the ALJ's recitation to be a fair characterization of them, including the mostly normal objective examinations.   Moreover, as noted above, the ALJ evaluated Plaintiff's subjective complaints of pain, finding them not entirely credible, and further discounted Dr. Snellgrove's opinion regarding absenteeism.  These conclusions are supported by the record.  While Plaintiff takes issue with the ALJ's consideration of the lack of objective testing to support Dr. Snellgrove's assessment of off-task time and absenteeism, the Court finds this wholly relevant.  Without some level of objective testing or other indicators to support these conclusions, they are either (1) solely a recitation of Plaintiff's subjective reports or (2) supposition without support.  Neither can support a disability finding. *See Castillo v. O'Malley*, No. 24-41-CV, 2024 WL 4707253, at *3 (2d Cir. Nov. 7, 2024) ("At

18

the same time, an ALJ is 'not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'") (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)); *see also O'Connor v. Comm'r of Soc. Sec.*, No. 5:11-cv-1425, 2013 WL 1180963, *5 (N.D.N.Y. Mar. 20, 2013) (finding that the ALJ properly rejected physician's opinion regarding plaintiff's absenteeism rate of four days a month, despite some evidence to the contrary, where "objective medical evidence in the record provid[ed] substantial evidence to support the ALJ's finding that [the opinion] is speculative.")

Significantly, it is the function of the ALJ to thoroughly and fairly weigh the evidence. *Matta*, 508 F. App'x at 56 (noting that an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.") And ALJ Pelton did precisely that, as she detailed Plaintiff's treatment record, evaluated the medical opinions, assigning them each weight, and then formulated an RFC consistent with the entirety of the record. None of the other medical opinions support the significant limitations to which Dr. Snellgrove opined, rendering his opinions outliers, not undisputed as Plaintiff claims, and the objective treatment notes similarly do not support these opinions such that "a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448. Accordingly, the Court finds no error.

## B. The ALJ's Step Four and Alternative Step Five Findings Were Proper.

Plaintiff argues that the ALJ erroneously concluded that Plaintiff could perform past work as well as other work because: (1) Plaintiff's impairments preclude him from standing/walking six hours per day; (2) his impairments require him to frequently change positions and cause him to be off-task more than employers tolerate; and (3) his pain,

19

fatigue, and frequent medical appointments render him off-task or absent beyond employer tolerances.  (Doc. 8-1 at 18-19.)  Other than to assert this argument, Plaintiff offers no explanation as to why these conclusions were erroneous under the standard this Court must apply.

Thus, the Court does not know on what grounds Plaintiff challenges these conclusions—other than to merely disagree with the ALJ's resolution.  The Court notes that the ALJ relied upon testimony from a vocational expert, and Plaintiff does not challenge this testimony or the vocational expert's qualifications.  The Court further notes that challenges to whether Plaintiff is able to walk or stand six hours was analyzed thoroughly above, as were the propriety of the ALJ's conclusions pertaining to the off-task time or the absenteeism based on the proffered opinions.  The Court cannot intuit Plaintiff's arguments and therefore concludes that Plaintiff has forfeited any additional arguments beyond those addressed above.  *See Ashley P. H.*, 2025 WL 606547, at *5 (recognizing that "[w]here a party fails to raise an issue sufficiently, the court may 'exercise' its 'discretion to treat' such a 'claim of error as waived.') (internal citation omitted).

Moreover, the burden to show the necessity of a more limiting RFC rests with Plaintiff, and he has failed to carry this burden. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (recognizing that the plaintiff has the burden to prove a more restrictive RFC).

## IV.    CONCLUSION

Based on the foregoing, the Court finds no basis for remand.  **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 8) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 10) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: July 7, 2026                                  J. Gregory Wehrman
Rochester, New York                          HON. J. Gregory Wehrman
                                                           United States Magistrate Judge